**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **ACE AMERICAN INSURANCE COMPANY** | **CIVIL ACTION** |
| **VERSUS** | **NO. 07-3749** |
| **THE ADMINISTRATORS OF THE TULANE EDUCATIONAL FUND** | **SECTION B(5)** |

## ORDER AND REASONS

Before the Court is Defendant's Motion to Alter or Amend Order Granting in Part and Denying in Part Plaintiff's Motion for Summary Judgment (Motion for Reconsideration) (Rec. Doc. No. 54) and Plaintiff's opposition of the same (Rec. Doc. No. 58). After review of the arguments, and applicable law, and for the reasons that follow,

**IT IS ORDERED** that Defendant's Motion for Reconsideration (Rec. Doc. No. 54) is **DENIED.**

## BACKGROUND

The gravamen of Tulane's claim is that they believe they are entitled to reconsideration on the issue of whether the Ace American Policy excludes from coverage damages relating to water backup through sewers, drains, and sump pumps. They argue that this Court erroneously relied on a provision of the Lexington Policy that was superseded. If this Court accepts Tulane's argument, they submit that the correct provision indicates that the Lexington Policy (and consequently, the Ace American Policy

1

does cover damages relating to water backing up through sewers, drains, and sump pumps.

Defendant, Administrators of the Tulane Educational Fund, ["Tulane"] had in place at the time Hurricane Katrina struck an insurance policy covering its campuses. The policy consisted of four layers of coverage providing a total of $450 million in coverage limits. Lexington Insurance Company ["Lexington"] provided the primary layer of coverage which had a $25 million limit of liability. Zurich American ["Zurich"] provided the first layer of excess insurance, which applied in excess of Lexington's $25 million limits. The Zurich policy had a $75 million limit of liability. Allianz issued the second layer of excess insurance, which applied in excess of Lexington and Zurich's $100 million limit. The Allianz policy had a $250 million limit. Plaintiff, Ace American Insurance Company, ["Ace American"] issued the final layer of coverage, which applied in excess of the $350 million limits collectively provided by Lexington, Zurich, and Allianz. The Ace American policy had a $100 million limit of liability.

The Ace American policy was an "all risk" policy subject to certain exclusions. Specifically, the policy provided the following:

> This policy does not insure against loss or damage caused by or resulting from any of the following causes of loss regardless of any other cause or event contributing concurrently or in any other sequence to the

> loss:
> ...
> (B) Flood;
> ...
> (K) This policy does not insure any loss, damage, or expense consisting of, caused by, contributed to, or aggravated by mold, moss, mildew, fungi, spores, bacterial infestation or any similar organism, wet or dry rot and extremes of temperature or humidity, whether directly or indirectly the result of a covered peril. This includes, but is not limited to, the cost for investigation, testing, remediation services, extra expenses or business interruption. Such loss is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

As a result of Hurricane Katrina, Tulane's campuses sustained damage in excess of $650 million. Subsequently, both Lexington and Zurich paid the policy limits to Tulane. Tulane then reached a settlement agreement with Allianz. Tulane brought suit in state court against Ace American claiming that it had sustained damages in excess of Ace American's point of attachment of $350 million. Ace American then filed suit in federal court for declaratory relief. Specifically, Ace American sought a declaration that no flood coverage existed under the Ace American policy, that the policy provided no coverage related to the presence of mold, and that coverage could not attach under the Ace American policy because the $350 million in coverage underlying the Ace American policy had not been exhausted. Tulane's state court proceeding was then removed and consolidated

with the federal court suit for declaratory relief filed by Ace American.

Ace American then moved for summary judgment. Among Ace American's contentions was that the Ace American policy excludes damages caused by water which backed up through sewers or drains as well as all damages caused by mold. Tulane argued that given the definition of the term "flood" in the Ace American policy, the policy does not exclude damage caused by water which has backed up in a sewer or drain. Tulane explained that given the broad definition of "loss occurrence" found in the policy, the policy's flood exclusion clause does not apply to damages caused by a hurricane.

The policy defines the term "flood" as follows' "Flood, meaning flood waters, surface water, waves, tide or tidal water, the release of water, the rising, overflowing or breaking of boundaries of natural or man-made bodies of water, or the spray from any of the forgoing, all whether driven by wind or not." Tulane argued that because this definition did not specifically include damage caused by water backed up through sewers or drains, the policy covers such water damage. Ace pointed out that in addition to the flood exclusion in the Ace Policy, the Ace Policy has a Follow Form Clause which states that it is subject to the same terms and conditions as the Lexington Policy (primary policy).

The Lexington Policy excludes "water that backs up from a sewer or drain...." The Court found that Ace American's was reasonable in interpreting that while its own Policy may not specifically exclude damages caused by water that backed up from a drain, the Lexington policy does exclude such damage. Thus, where the Ace American Policy is subject to the Lexington Policy's terms and conditions, the Ace American Policy excludes water that has backed up from a sewer or drain. This Court ordered that as a matter of law, "the Ace American Policy excludes damages caused by water that has backed up through a sewer or drain." (Rec. Doc. No. 50).

## DISCUSSION

A motion to reconsider a summary judgment ruling may be properly brought as a motion to alter or amend a judgment pursuant to Rule 59(e) of the Federal Rules of Civil procedure. *See Thomas v. Great Atlantic and pacific Tea Co., Inc.,* 233 F.3d 326,327 n.1 (5th Cir. 2000); *Patin v. Allied Signal Ins.,* 77 F.3d 782, 785 n.1 (5th Cir. 1990). In describing the purpose behind this motion, the Fifth Circuit has held:

> [S]uch a motion is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been raised before entry of judgment. Rather, Rule 59(e) serves the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence.

5

> Reconsideration of a judgment is an extraordinary remedy that should be used sparingly.

The Federal Rules of Civil Procedure do not provide for a "Motion for Reconsideration." *Hamilton Plaintiffs v. Williams Plaintiffs*, 147 F.3d 367, 371 n. 10 (5th Cir. 1998.) Moreover, "[t]he Court should refrain from altering or amending a ruling or judgment under Rule 59(e) of the Federal Rules of Civil Procedure unless one of the following grounds is present: (1) "The judgment is based upon manifest errors of law or fact;(2) The existence of newly discovered or previously unavailable evidence;(3) Manifest injustice will result; or (4) an intervening change in controlling law has occurred." *Veron v. Talamo,* No. 06-4644, 2007 WL 1259222, 1 (E.D. La. Apr. 27, 2007).

Tulane pointed out in its Opposition to Plaintiff Ace American Insurance company's Motion for Summary Judgment that:

> "ACE's flood exclusion is unique and completely different than the exclusion in *Sher v. Lafayette Insurance Co.,* No. 07-C-2441, --- So.2d ---, 2008 WL 928486 (La. 2008). In *Sher,* the Louisiana court interpreted a flood exclusion in a homeowner's insurance policy. Notably, the exclusion at issue excluded "water" damage, and specifically enumerated specific types of water damage it applied to. In the exclusion in *Sher*, "water" damage was defined and segregated into four distinct types of water damage (1) flood; (2) mud slide or mud flow;

> (3) water that backs up from a sewer or drain; or (4) water under the ground surface pressing on, or flowing, or seeping through foundations, walls, floors, etc. Because the term "flood" was not defined in the policy, the Louisiana Supreme Court interpreted "flood" broadly. *Id.*, p.6. Unlike the policy in *Sher*, the ACE Policy includes a specific and limited definition of flood. Accordingly, the ACE Policy definition of "flood" must apply as a matter of law.
>
> ACE's "flood" definition is limited and not nearly as broad as the "water" or flood exclusion in *Sher*. The ACE Policy definition of "flood" does *not* include or apply to (1) water that backs up through sewers, drains, or sumps or (2) water below the surface of the ground which flowed, seeped or leaked through foundations, walls, basements or other floors. Much of the water damage associated with Hurricane Katrina took the form of water that was backed up from sewers and drains and water that seeped into basements or other floors. If ACE intended to exclude water damage from these sources, it could have done so, but it did not. Accordingly, should the Court find that the flood exclusion in the ACE Policy applies, its application must be limited to the specific type of water damage caused by "flood" as defined in the ACE Policy.

In response, Ace American pointed out that in addition to excluding damage caused by "flood" under the Ace American Policy, the Ace American Policy contains a Follow Form Clause which allows it to subject itself to the terms and conditions of the Lexington Policy which explicitly in its Policy excludes such damages.

This Court's holding was based on the language of the definition of "flood" in the Lexington Policy. Whether the

7

definition of "flood" in the Lexington Policy was used in that Policy to exclude or grant coverage does not affect the fact that the Ace American Policy is subject to the flood definition in the Lexington Policy as noted by the Court.[1] The Lexington Policy was referred to in determining the exclusion's specific enumeration of specific type of water damage, namely, water that backs up from sewers or drains, as was the case in *Sher.* Accordingly, reconsideration of this matter is inappropriate.

A motion to amend or alter is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been raised before entry of judgment. Ace American never argued that the Lexington Policy excludes flood. Because the Ace American Policy expressly excludes flood, the Ace Policy is not subject to the terms of the Lexington Policy that grant coverage for flood. The Ace American Policy provides: "Unless otherwise excluded, this policy covers Real and Personal Property of the Insured and Time Element only, as more fully outlined in the primary policy."[2] As the Court previously determined, the broader definition of "flood" in the Ace American Policy does not negate the language in the Lexington "flood" definition that expressly includes water that backs up through sewers, drains and sumps.[3]

---

[1] Amended Order (Rec. Doc. No. 53) at p.10.
[2] Tulane's Response to Ace American's MSJ at 7.
[3] *Id.* at 11-12.

This Motion does not rely on the existence of any newly discovered or previously unavailable evidence. Instead, it is an attempt to rehash previously decided arguments. As this Court previously stated in *Veron v. Talamo*, No. 06-4644, 2007 WL 1259222, *1, "[r]econsidering a judgment is an "extraordinary measure, which courts should use sparingly." Because the definition of "flood" in the Lexington Policy would have excluded water that backs up through sewers, drains, or sumps if used in an exclusion in that policy, it excludes water that backs up through sewers drains, or sumps in the Ace American Policy.

## CONCLUSION

Accordingly, **IT IS ORDERED** that Defendant's Motion to Alter or Amend Order Granting in Part and Denying in Part Plaintiff's Motion for Summary Judgment (Motion for Reconsideration) (Rec. Doc. No. 54) is **DENIED**.

New Orleans, Louisiana this 10th day of March, 2009.

**UNITED STATES DISTRICT JUDGE**